# Painter, Appellant, *v.* Western Union Telegraph Company.

*Equity—Injunction—Preliminary injunction—Doubtful right.*

A court of equity will not continue a preliminary injunction against a corporation to protect a right under a written contract, where it is doubtful (1) whether the agreement was an agreement of the corporation which made it; (2) whether the corporation had a right to convey the privilege claimed by the plaintiff; (3) whether the agreement bound the successors of the corporation; (4) whether the agreement was limited to a particular time, and for what length of time, and (5) whether there was mutuality in the agreement.

Argued Nov. 21, 1901. Appeal, No. 202, Oct. T., 1901, by plaintiff, from decree of C. P. Chester Co., dissolving preliminary injunction in the case of Linda A. Painter, Executrix of U. H. Painter, Deceased, v. Western Union Telegraph Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D PORTER, JJ. Affirmed.

Bill in equity for an injunction.

The facts are set forth at length in the opinion of the Superior Court.

*Error assigned* was decree dissolving preliminary injunction.

*Thomas W. Pierce*, for appellant.

*Alfred P. Reid*, for appellee.

OPINION BY BEAVER, J., January 21, 1902:

The plaintiff sets forth in a bill in equity the following agreement:

"It is hereby agreed between James D. Reid, Supt. of the Atlantic & Ohio Telegraph Company and I. H. Painter and others associated with him for the purpose of constructing a line of telegraph from the city of West Chester to connect with one of the wires of the Atlantic and Ohio Telegraph Company at Oakland:

"1. That said connection shall involve the said Atlantic and Ohio Telegraph Company in no disputes or controversies or engagements or suits of any kind whatsoever growing out of the acts of the said U. H. Painter and associates beyond the purposes of this agreement.

"2. That, said connection shall consist in the permission hereby granted by the Atlantic and Ohio Telegraph Company to the said Painter and associates to connect two wires leading from the city of West Chester, Pa., to one of the wires of the Atlantic and Ohio Telegraph Company in such a manner that the machinery established in the said city of West Chester shall be in the circuit of the said wire of the Atlantic and Ohio Telegraph Company, the same as are other places and machinery now therewith connected.

"3. The said Painter and associates or company formed by them or by them duly authorized, shall have the right to select an operator to work the machinery at West Chester, who may be acceptable to the Atlantic and Ohio Telegraph Company, and shall submit to its rules of government in all respects, and shall be further privileged to retain all the receipts for dispatches from West Chester to any office on the line of the Atlantic and Ohio Telegraph Company, the said Atlantic and Ohio Telegraph Company likewise retaining all receipts for dispatches proceeding to the said city of West Chester, without further claim thereupon in either case.

"4. The said line proposed to be built shall at all times be kept in good condition by the owners thereof and so as not to interfere with the prompt dispatch of business.

"5. Dispatches proceeding beyond Philadelphia to other lines and from Baltimore beyond to other lines running therefrom, and from Pittsburg to other lines leading therefrom and for which the Atlantic and Ohio Telegraph Company have to pay said lines shall be duly charged to said Painter and associates or company formed by them or under their authority, and collected monthly.

"6. Due diligence to be given to all dispatches left for transmission, the same as at offices and for stations already connected by the line of the Atlantic and Ohio Telegraph Company.

Witness my hand and seal, under due authority given me there-
for, at the city of Columbus, Miss., this 20th day of Sept., 1851.
" Witness:

"JAMES D. REID,
" Supt. A. & O. Telegraph Co.
" W. C. MOORHEAD,
"Pres't. A. & O. Tel. Co."

" NATHANIEL E. GOODWIN.
" Approved October 7, 1851, Pittsburg.

The bill further alleges that Painter and his associates estab-
lished the line contemplated by the agreement; that the said
line has been maintained in good condition by the owners there-
of and their successors, and that U. H. Painter became the sole
and exclusive owner of the property in the said line of circuit;
that the said U. H. Painter died, having made his last will and
testament, in which he appointed the present plaintiff executrix,
who has maintained and operated the said line since the de-
cease of her husband; that the Western Union Telegraph Com-
pany, the defendant, is the owner, lessee, operator and manager
of the line or lines of the Atlantic & Ohio Telegraph Company
and has succeeded to all the rights, duties and obligations of
the said Atlantic & Ohio Telegraph Company, under said agree-
ment.

The bill further sets forth that the said defendant, in viola-
tion of the said agreement and contrary to its purposes and
intent, is about to construct, build and erect a line or lines to
connect West Chester with its lines, to establish an office, with
telegraph machinery, so that the same shall be in the circuit of
its lines, as the line of plaintiff now is, etc., and asking that
" the defendant, its agents, servants and employees, be enjoined
and restrained, specially until hearing and finally thereafter,
from constructing and erecting any line or lines of wire to con-
nect West Chester with its lines; from establishing an office
with telegraph machinery there, in the circuit of its lines, for
the transmission of messages and other business connected with
telegraphy, from disconnecting the plaintiff's lines from the
wires of the defendant, so that the same shall not be in circuit
with said wires." A preliminary injunction was granted and,

upon the hearing of a motion to dissolve, the said injunction was dissolved and the present appeal is from that decree.

The court below, in the opinion dissolving the preliminary injunction, states the ground upon which its decree was based, as follows : " We are not required at this time to determine finally and exactly the rights of the parties under the agreement, but must decide simply whether the plaintiff's contention is so clearly sound as to justify a continuance of the injunction. If it is at all doubtful, the defendant may not be restrained. For the reasons given we are doubtful of the soundness of the plaintiff's contention and are inclined to believe that the defendant may lawfully do what is sought to be enjoined and the injunction must, therefore, be dissolved."

The general rule in regard to preliminary injunctions, is stated in 9 P. & L. Dig. of Dec. 14080 : " As a rule, equity will not afford specific relief in granting a preliminary injunction, but in a case where the right is clear and undeniable, where the injury would be irreparable and of great magnitude and where danger to life is inevitable, such relief has been afforded."

Is the right to such relief in this case doubtful ? Confining ourselves to the questions which grow out of the agreement upon which the plaintiff's bill is founded, was it the agreement of the corporation ? It purports to be an agreement between James D. Reid, superintendent, etc., and lacks the indicia of corporate action. Admitting that Reid had authority to make the agreement, as recited in the agreement itself, can a telegraph company convey to an individual or individuals its corporate rights, privileges and franchises ? If the original agreement was binding upon the corporation, for what length of time was it so binding ? Did the agreement bind the successors of the corporation which made it ? Is there mutuality in the agreement ? What were Painter and his associates bound to do under the agreement ? Could the corporation enforce the agreement as against them and, if so, could it he enforced against their assigns and against the executor of a deceased assignee ? In other words, could the present defendant compel the present plaintiff to maintain the line and office provided for in the original agreement and could it by injunction prevent the present plaintiff from discontinuing the line and office referred to ? Is the right granted to Painter and his associates in

the agreement a mere license, as indicated by the words "permission granted" in the second paragraph, "further privileged" in the third and other expressions? Admitting the right of the corporation to make such a conveyance, is it an actual conveyance of rights, privileges and franchises which belong to the corporation? If so, for what length of time were these rights and privileges conveyed? The agreement is silent upon that question. We do not propose to pass upon any of these questions for the reason, indicated in the opinion of the court below, that they are to be finally passed upon hereafter; but they are simply stated, as might other questions equally serious, as raising doubt which makes it by no means clear that the injunction should be continued. We are clearly of the opinion that the court below was justified in the decree dissolving the preliminary injunction and it is, therefore, affirmed.